UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAJASON L.,

        Plaintiff,                       **DECISION AND ORDER**

    v.

                                         6:20-cv-6884-EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Lajason L. ("Plaintiff") commenced this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 11; Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is denied and the Commissioner's motion (Dkt. 12) is granted.

**BACKGROUND**

Plaintiff protectively filed his applications on August 10, 2015. (Dkt. 9 at 194, 200, 205-06).[1] In his applications, Plaintiff alleged disability beginning December 1, 2013, and later amended his alleged onset date to August 22, 2017. (*Id*. at 65-70, 194, 200, 428, 435, 544). Plaintiff's applications were initially denied on January 8, 2016. (*Id*. at 194-04). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Connor Jane O'Brien.[2] (*Id*. at 38-193). On March 25, 2019, Plaintiff withdrew his Title II claim. (*Id*. at 544). On September 17, 2019, the ALJ issued an unfavorable decision. (*Id*. at 18-30). Plaintiff then requested review by the Appeals Council, which the Council denied on September 21, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 6-11).

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

[2]    Following the initial April 25, 2018, hearing, Plaintiff had three supplemental hearings before the ALJ. (*Id*.).

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis and determined that Plaintiff met the insured status requirements of the Act through December 31, 2018. (Dkt. 9 at 20). She also determined that Plaintiff had engaged in substantial gainful activity since August 22, 2017, the alleged onset date. (*Id*.).

- 4 -

At step two, the ALJ found that Plaintiff suffered from several severe impairments: dysfunction of his left hand post gunshot wound, anti-social personality disorder, posttraumatic stress disorder, generalized anxiety disorder, major depressive disorder, cannabis dependence disorder, and alcohol dependence disorder. (*Id.* at 21).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with several nonexertional limitations. Specifically, the ALJ determined that Plaintiff had

> no limitations to his right arm, which he can use as if dominant (*i.e.* write, cut, tie shoes). He can reach his left arm in all directions and can push/pull and feel with his left arm. He cannot lift or carry with his left arm but can use his left as a support or guide. He can occasionally handle with his left hand. He can frequently, but not constantly, zipper and button with his left hand, but only occasionally otherwise finger with his left; he cannot move his left ring finger. He can adjust to occasional changes in work setting and make simple work-related decisions. He cannot interact with the public[,] and cannot perform tandem or teamwork. He requires three, additional, short, less-than-five-minute breaks in addition to regularly scheduled breaks.

(*Id.* at 22).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.* at 28). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the occupations of housekeeper/cleaner, page, addresser, and

photocopy machine operator. (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of her decision. (*Id.*).

## II.     The ALJ's RFC Determination is Supported by Substantial Evidence

In his single argument, Plaintiff ask this Court to remand this matter to the Commissioner for further proceedings because the ALJ improperly evaluated the opinion of his mental health therapist Vickie McVay, LMSW, ("Ms. McVay") and medical expert Richard Anderson, M.D. ("Dr. Anderson"), and failed to incorporate the limitations identified by both practitioners associated with Plaintiff's inability to interact with coworkers and supervisors, as well as the need to be absent from work for two days per month, when she formulated Plaintiff's mental RFC. (Dkt. 11-1 at 14-22). For the reasons stated below, the Court disagrees.

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis. 20 C.F.R. §§ 416.945; *see also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984). The ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 53 (2d Cir. 2013), and may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 F. App'x. 75, 79 (2d Cir. 2018). When the record contains competing medical opinions, it is the role of the Commissioner,

and not this Court, to resolve such conflicts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Upon review of the record, the Court finds that the ALJ properly considered the opinion evidence of record, treatment records of Plaintiff's mental health examinations, as well as his own admissions when she formulated Plaintiff's RFC restricting his tandem and teamwork but not his interactions with supervisors.

As an initial matter, Plaintiff argues that the ALJ failed to incorporate limitations related to his interaction with the coworkers. (Dkt. 11-1 at 14-21). However, this argument fails because the ALJ explicitly restricted Plaintiff from engaging in tandem or teamwork that presumes interactions with coworkers. (Dkt. 9 at 22). In other words, any tandem or teamwork, by definition, involves work that requires collaboration with other colleagues in the workforce. Additionally, the ALJ restricted Plaintiff to performing simple work and identified four unskilled jobs, which ordinarily require working primarily with objects, rather than data or people. *See* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) (Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.").

As for Plaintiff's contention that the ALJ failed to limit his ability to interact with supervisors, the Court finds this argument without merit. Plaintiff correctly points out that "a limitation in interacting with the public is not equivalent to a limitation interacting with

coworkers or supervisors." *Smith v. Colvin*, No. 1:16-CV-00295 (MAT), 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) (citation omitted). Indeed, remand may be warranted when an ALJ failed to distinguish between the public, coworkers, and supervisors in the RFC, or failed to explain why limiting plaintiff's interaction with supervisors was not necessary. *See, e.g.*, *Rodney M. v. Comm'r of Soc. Sec.*, No. 21-CV-321S, 2023 WL 355339, at *4 (W.D.N.Y. Jan. 23, 2023) (the ALJ failed to distinguish the public from coworkers or supervisors when he failed to pose a question to the VE about a hypothetical plaintiff who could interact with one group of people but not the other); *Annamarie A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1326-MJR, 2022 WL 2712539, at *8 (W.D.N.Y. July 13, 2022) ("To the extent an ALJ distinguishes between the groups with whom a claimant can interact, he must explain and provide support for that distinction." (collecting cases)); *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) ("The ALJ's failure to then either impose a limitation as to plaintiff's ability to interact with supervisors, or to explain, based upon the evidence in the record, why one was not necessary, is an error which requires remand." (collecting cases)).

Contrary to Plaintiff's contention, the record here does not support a finding that Plaintiff's interaction with supervisors should have been limited by the ALJ. Plaintiff formulates his argument solely on two medical opinions—one of medical expert Dr. Anderson and the other of his mental health therapist Ms. McVay—both of whom found Plaintiff to have marked limitations in his ability to interact with others. (Dkt. 9 at 81, 83, 139, 149, 151). However, such reliance is misplaced because neither opinion sufficiently established that Plaintiff was limited in his interaction with supervisors.

Indeed, the ALJ considered the opinions of Dr. Anderson and Ms. McVay when she formulated Plaintiff's RFC, and precisely based on such consideration restricted his interaction with the public and coworkers. (*Id*. at 23-24). Specifically, Dr. Anderson, having reviewed Plaintiff's symptoms and diagnoses received from various mental health practitioners, as well as his long history of being exposed to violence and being a perpetrator of violence, testified that Plaintiff would be markedly limited in interacting with others at the hearing. (*Id*. at 81, 83, 139, 149, 151). However, at no point during his testimony, did Dr. Anderson differentiate between Plaintiff's ability to interact with different social groups, or specifically indicate that Plaintiff was limited in his ability to interact or receive criticism from supervisors. Importantly, Dr. Anderson repeatedly indicated that Plaintiff's marked limitations in social functioning were not continual and existed only on an intermittent basis, and that they were impacted by Plaintiff's continuous use of cannabis and alcohol, which made it difficult for Dr. Anderson to determine the severity of Plaintiff's limitations. (*Id*. at 81-83, 86, 151, 153, 161).

Plaintiff's therapist Ms. McVay, having observed Plaintiff on three occasions, opined that he was markedly limited in maintaining social functioning, and, among other things, was unable to accept instructions and respond appropriate to criticism from supervisors.[3] (*Id*. at 24, 1177-82). However, similarly to Dr. Anderson, Ms. McVay

---

[3]    Effective January 17, 2017, the limitations in four broad areas of functioning of the Paragraph "B" criteria were amended; however, because the form used by Ms. McVay to determine Plaintiff's limitations was filled out prior to January 17, 2017, it referenced the four areas of functioning that existed prior to the amendments. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).

consistently indicated throughout her opinion that she was unable to make an accurate assessment of Plaintiff's mental health limitations due to his continuous use of marijuana. (*Id*. at 1177-82).

Aside from Ms. McVay's comment regarding Plaintiff's interaction with supervisors that cannot be fully relied on due to the inaccuracy of her findings because of Plaintiff's continuous use of marijuana, nothing in either of the opinions supports Plaintiff's assertion that his interaction with supervisors should have been restricted by the ALJ. Plaintiff presented no other evidence in the record that supported a more restrictive RFC than the one formulated by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff has a duty to prove a more restrictive RFC). While the bulk of the record demonstrates that Plaintiff was limited in interacting with others, which was fully accounted for by the ALJ by restricting Plaintiff's interaction with the public and to perform tandem and teamwork, it does not support Plaintiff's contention that his interaction with supervisors should have also been limited.

The Court is satisfied with the ALJ's analysis of the record because she understood the distinction between the various social categories, which is evidenced by several hypotheticals that the ALJ posed to the VE that addressed the limitations of a hypothetical plaintiff to perform tandem or teamwork, interact with the public, and accept criticism from supervisors. (*Id*. at 99, 166-67). *Cf. Rodney M*., 2023 WL 355339, at *4 (the ALJ erred when he did not pose a hypothetical of a claimant who was able to have occasional contact with the public without discussing the claimant's ability to interact with colleagues or supervisors). Additionally, the ALJ made references in her decision to Plaintiff's lack of

disciplinary tickets, or any time spent in the Special Housing Unit (SHU) during his incarceration, and as a result, reached a conclusion that Plaintiff was capable of performing under pressure, albeit in a structured environment, which certainly supports the finding that Plaintiff was capable of interacting with authority figures. (Dkt. 9 at 24).

Although the ALJ could have been more specific in her explanation of why a limitation on Plaintiff's ability to interact with supervisors was not necessary, the Court is satisfied with the ALJ's analysis because the record supports the ALJ's ultimate RFC determination. Even if the ALJ erred, which she did not do here, in not distinguishing between the social groups when making the RFC determination, such error would be a harmless one because substantial evidence supports the ALJ's RFC finding that only restricts Plaintiff's contact with the public and coworkers. *See Tilles v. Comm'r of Soc. Sec.*, No. 13-CV-6743 (JPO), 2015 WL 1454919, at *4 (S.D.N.Y. Mar. 31, 2015) (the ALJ's error not to provide an explanation for omitting the reference to plaintiff's contact with supervisors was harmless when substantial evidence supported the ALJ's RFC determination restricting plaintiff's contact to the public and coworkers).

Indeed, substantial evidence supports the ALJ's findings that Plaintiff was restricted in his interacting with coworkers and the public but does demonstrate that Plaintiff had any difficulty in his ability to interact with people of authority or supervisors. Plaintiff testified that he had a hard time concentrating on his work while being around *other people* and did not indicate ever having any difficulties with those in supervisory positions. (*Id.* at 133). He also indicated that he had to adhere to rules while in prison to avoid receiving consequences for any misbehavior, and that he never received any disciplinary tickets and

was never placed in the SHU while incarcerated, and was, in fact, in the "honor block" during his last month of incarceration. (*Id*. at 75-77, 189). Although Plaintiff appeared to function without any difficulty with authority figures in a structured environment while in prison, the record also reveals that he was able to do so upon his release from prison when he was compliant with his parole requirements that led up to his successful completion of parole in March 2017. (*Id*. at 1113).

In his function report, Plaintiff indicated that he had no problems getting along with family, friends, neighbors, or others, but reported staying isolated and disliking being in large crowds or around a lot of people. (*Id*. at 482). Although he affirmatively responded to the question of whether or not he had "any problems getting along with bosses, teachers, police, landlords, or other people in authority," Plaintiff failed to provide an explanation for his answer as the form prompted him to do but stated that he never lost a job because of problems getting along with people. (*Id*. at 484). *See Michael J. P. v. Comm'r of Soc. Sec.*, No. 20-CV-1595 (CJS), 2022 WL 4354126, at *6 (W.D.N.Y. Sept. 20, 2022) (no error to omit the limitation related to supervision where the record contained only one instance in which plaintiff complained about being supervised, and it concerned the pace of his work rather than an unwillingness to be supervised, and where he testified that he could not work because of his inability to get along with others). Although Plaintiff was "obsessed about being oppressed," his mental health treatment notes reveal that such obsession stemmed from his perception of being treated poorly by others because of his race, and that despite that, Plaintiff wanted to obtain his barber license again, and "work under someone" to become independent and open his own business. (*Id*. at 973, 976, 993).

Plaintiff was repeatedly assessed with being able to follow simple and sometimes complex directions and instructions. (*Id.* at 81, 565, 1079, 1084, 1088, 1092, 1096, 1100, 1105, 1180). He used public transportation and continued to cut hair as a barber during the application period despite the gunshot wound to his dominant hand, which certainly demonstrates that he was able to interact with others on some basis. *See Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-0394-MJR, 2019 WL 3369255, at *7 (W.D.N.Y. July 26, 2019) (plaintiff was not limited in his ability to interact with supervisors when he could follow directions and maintain attention for work tasks, hoped to return to school and work, did not testify about difficulties interacting with supervisors, and never lost a job because of problems getting along with others).

The restriction on Plaintiff's contact with the public, and tandem and teamwork placed by the ALJ was supported by the record even when some of Plaintiff's providers noted Plaintiff having only mild difficulty relating with others and having an ability to maintain socially appropriate behavior. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (the ALJ properly deviated from the medical recommendations to craft a more restrictive RFC based on the evidence in the record); *see also Meiers v. Comm'r of Soc. Sec.*, 2020 WL 2768740, at *5 (W.D.N.Y. 2020) (plaintiff failed to provide any support for her contention that the ALJ's determination not to include any limitation relating to her ability to interact with supervisors was flawed when the record demonstrated that plaintiff reported no difficulty following instructions or responding appropriately to those in authority, and when her physicians concluded that she had limitations in her ability to interact with others).

The ALJ properly considered such evidence in light of the other evidence in the record that demonstrated Plaintiff's complaints of being paranoid around people and stressed out in crowds, refusing to attend group therapy sessions, thinking that everyone was suppressing him, having thoughts of harming others, avoiding shopping or sitting in a laundromat presumably because of potential exposure to groups of people, to ultimately restrict Plaintiff's contact with the public and perform tandem and teamwork. (*Id*. at 198, 564, 945, 976, 1079, 1084, 1088, 1092-93, 1096, 1100, 1102-03, 1105, 1114, 1130, 1172, 1181, 1216, 1245, 1261). Because it is the ALJ's responsibility to resolve any conflicting evidence in the record, the Court finds that the ALJ's analysis was free from legal error.

Plaintiff's argument regarding the ALJ's failure to account for his absences in the RFC is also not persuasive. Aside from relying on Ms. McVay's single opinion that he would be absent from work two days per month, Plaintiff failed to substantiate his argument with either Ms. McVay's treatment records that would support her findings, or any other evidence of record that would cast doubt on the ALJ's evaluation of her opinion. In fact, nothing in Ms. McVay's treatment notes or the rest of the record supports this limitation. Moreover, this conclusion was confirmed by Dr. Anderson at the hearing, who testified about the lack of support in the record for Ms. McVay's finding about Plaintiff's level of absenteeism. (Dkt. 9 at 88-89). Because the ALJ's determination does not have to perfectly correspond with a medical opinion provided that the assessment is supported by the record, *see Matta*, 508 F. App'x at 53, and because the record does not support Ms. McVay's conclusion regarding Plaintiff's absenteeism, the Court finds that the ALJ properly omitted such a limitation from Plaintiff's RFC.

Therefore, without providing proper support for this arguments, Plaintiff's challenges amount to a disagreement with the ALJ's findings, and while he may disagree with the ALJ's conclusions, it is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)). For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet his burden of a more restrictive RFC. As a result, the RFC determination is supported by substantial evidence. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 13, 2023
Rochester, New York